## DUGGAN et al. v. SLOCUM.

(Circuit Court, D. Connecticut. October 5, 1897.)

### No. 887.

1. CHARITIES—VALIDITY OF BEQUEST.
   A bequest for a public library and for a protectory for boys is a charitable bequest, and entitled to the benefit of Gen. St. Conn. § 2951, which provides that "all estates that have been or shall be granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for the preservation, care and maintenance of any cemetery, cemetery lot, or of the monuments thereon, or for any other public and charitable use, shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever."

2. SAME—UNCERTAINTY.
   Such a bequest is not void for uncertainty as to the object, or for the want of a provision for the selection of the beneficiaries, the particular mode of carrying the intent of the donor into effect being left to the discretion of the trustees.

3. SAME—FAILURE TO PROVIDE FOR SUPPLYING VACANCY IN TRUSTEESHIP.
   The failure of the testator to provide for the appointment of other trustees in case of the death of the trustees named or their refusal to act does not invalidate the gift, the rule of law that in such an event other trustees are to be appointed by the court being substantially a part of the will.

4. SAME—PERPETUITIES.
   A direction to trustees to invest the trust fund for a term of 10 years or more at their discretion does not contravene the rule against perpetuities, as the trustees can be compelled to apply the fund to the use of the beneficiaries within a reasonable time after the expiration of 10 years.

5. SAME—FAVORABLE CONSTRUCTION.
   Charitable trusts are entitled to a favorable construction in courts of equity.

6. SAME—LAW OF TESTATOR'S DOMICILE.
   The validity of a charitable bequest is determined by the law of the testator's domicile.

John C. Donnelly and C. Walters, for complainants.
John O'Neill, for defendant.

TOWNSEND, District Judge. Demurrer to bill in equity. The three orators herein, describing themselves as British subjects, residing, respectively, in the state of Michigan, city of Dublin, Ireland, and the city of Montreal, Canada, bring this bill in behalf of themselves and all other heirs at law and next of kin of one John H. Duggan, deceased, who may unite in the prosecution thereof, and aver that they are respectively the brothers and sister and next of kin of said Duggan, late of the town of Waterbury, in the state of Connecticut, who had never married, and who died in said town on the 10th day of November, 1895, leaving the orators and other heirs at law and next of kin, not known to them, surviving; that said John H. Duggan was a priest of the Roman Catholic Church; that on August 5, 1895, the decedent executed a will, which was admitted to probate on December 2, 1895; that, the executors and trustees therein named having refused to qualify, one William J. Slocum, of said Waterbury, was duly appointed and duly qualified as administrator with the will annexed, "and is now acting, and has possession and

custody and control of the property and assets of the said Reverend John H. Duggan, hereinafter referred to, and claims to be entitled to the control, management, and disposition thereof." The orators further aver that they are advised that the provisions of the fourth paragraph of the will "are indefinite and uncertain in the subject and objects, invalid, and unauthorized by law, and unlawfully suspend the absolute power of alienation of said estate." They also aver that the estate attempted to be disposed of under said provisions amounts to $20,000, and that, in the event of such provisions being declared invalid, they would be entitled to one-half thereof, and that the amount in controversy exceeds the sum of $10,000; and they pray that said devises and bequests in the fourth paragraph of the will may be decreed to be illegal and void, and that the property remaining, after carrying out the other provisions of the will, may be accounted for and paid over to the orators and other heirs and next of kin.

The provisions of said fourth paragraph are as follows:

"Fourth. All the rest and residue of my estate, both real and personal, and wheresoever situated, I give, devise, and bequeath to my executors hereinafter named, in trust, however, for the following purposes, viz.: One-half to be used for the purpose of establishing and maintaining a library and reading room in connection with St. Patrick's parish in said Waterbury, or in whatever part of said Waterbury may be deemed by my said executors most suitable and convenient for the general public, and one-half for the purpose of establishing or maintaining a Roman Catholic protectory for boys in said diocese of Hartford: it being my will that the personal estate and rents accruing from any real estate of which I may die possessed be invested in safe securities for a term of ten years or more, at the discretion of my said executors. I also will that the management and disposal of my real estate be at the discretion of my said executors."

The defendant, said administrator with the will annexed, demurs to the complaint on several grounds. Inasmuch as the demurrer must be sustained if the provisions of said fourth paragraph of the will are valid, this point only will be considered. Complainant insists that said provisions are void upon three grounds: First, for uncertainty as to the object; second, for the want of a provision for the selection of the objects of the bounty; third, as contravening the rule against perpetuities.

It is clear that bequests for a public library and for a protectory for boys are charitable bequests, and entitled to the benefit of section 2951 of the General Statutes of Connecticut, usually referred to as the statute of 1702. It was enacted in 1684, and has been statute law of Connecticut ever since. Said section is as follows:

"All estates that have been or shall be granted for the maintenance of the ministry of the gospel, or of schools of learning, or for the relief of the poor, or for the preservation, care and maintenance of any cemetery, cemetery lot, or of the monuments thereon, or for any other public and charitable use, shall forever remain to the uses to which they have been or shall be granted, according to the true intent and meaning of the grantor, and to no other use whatever."

This statute pledges the good faith and honor of the state that all public and charitable bequests shall, if possible, be appropriated to the use intended by the donor. It is unnecessary to consider the

earlier decisions' of the supreme court of this state as to such bequests.    It is now certainly the well-settled policy of said court to uphold charitable-gifts wherever it is possible.

I do not think there is any such uncertainty as to the intent of the donor as should invalidate the gift.    A protectory for boys is an institution for the education and care of destitute or homeless boys, especially those in danger of becoming vicious.    The nature of such institutions under the care of the Roman Catholic Church is well known.    The property is left to certain persons named, in trust, to be used for the purpose of establishing and maintaining a library and reading room, and for the purpose of establishing or maintaining a Roman Catholic protectory for-boys.    The particular mode of carrying the intent of the donor into effect—the site of the library and reading room, the character of the books and papers, the selection of boys for the protectory, and the regulations for the conduct of both institutions—is wisely left to the discretion of the trustees.    It is manifestly the intent of the testator that the trustees shall make such provision for carrying out these purposes and selecting beneficiaries as they may think best.    He is presumed to have known that, in case of their death or inability or declination of the trust, the proper authority would fill their places.    The rule of law to that effect is substantially a part of the will.    It is as though the testator had said: "In case of the death of said trustees or their refusal to act, other trustees shall be appointed by the proper court."    Conklin v. Davis, 63 Conn. 377, 383, 28 Atl. 537;  Dailey v. City of New Haven, 60 Conn. 314, 324, 22 Atl. 499 et seq.    The general assembly of Connecticut would doubtless give suitable persons corporate powers for effectuating the provisions of this will, if necessary.

In Bronson v. Strouse, 57 Conn. 147, 17 Atl. 699, the will directed the executors to invest $1,000, and to apply the interest, so far as necessary, in keeping a burial lot in order, and added: "And, if any surplus shall remain, I will that said surplus shall be given to some, poor deserving Jewish family residing in the city of New Haven." Here there seems to be no more certainty as to the object, and certainly no more designation of the persons to make the selection of beneficiaries, than in the case at bar.    The court held that the executors had power to select the family, and to determine the amount to be expended for its relief.    Bronson v. Strouse is cited with approval in New Haven Young Men's Inst. v. City of New Haven, 60 Conn. 32, 40, 22 Atl. 447, 449, where the court says concerning it:    "Here, too, nothing was said about discretion, nor was it expressly stated who was to select the poor deserving Jewish family, but both were implied from the mere application of the money in the hands of the executors as trustees."    The objections raised in the present case were considered in Storrs Agricultural School v. Whitney, 54 Conn. 342, 8 Atl. 141, in which a fund was left to the selectmen and their successors, in trust, "the interest of which shall be applied by said selectmen to aid indigent young men of said town of Mansfield in fitting themselves for the Evangelical ministry."    The will was sustained.    In approving this case, in New Haven Young Men's Inst. v. City of New Haven, supra, the court says: "No discretion here

was expressly conferred, and nothing was said about it." In Strong's Appeal, 68 Conn. 527, 37 Atl. 395, the money was to be paid over to the pastors of certain churches, and two men appointed by the selectmen, who were to pay out and appropriate from time to time for the benefit of the worthy poor people of a certain town. It was claimed that the attempted trust was not for a charitable use, and was therefore contrary to the statute against perpetuities, and that it was void for lack of certainty in the beneficiaries; also, that the trustees were given no power as to selection, but only as to the amount of aid which they could disburse. The court sustained the will, and said: "A construction of the language used, so strict and narrow as this, would be alike contrary to principle and to the decisions in our own state." In Conklin v. Davis, 63 Conn. 377, 28 Atl. 537, the will was: "I give the trustees of the First Baptist Church in Hartford, in trust for the poor of said church, the sum of five hundred dollars; also, the Sunday School of the First Baptist Church the sum of five hundred dollars, under the supervision of the trustees of said church." There were no such officers as trustees of the church, but the deacons had had charge of trust funds for the poor. It was held that, if no trustees were named who were capable to take and act as such, it would not affect the validity of the gift; the court would supply trustees; and the will was sustained. In Hayden v. Connecticut Hospital, 64 Conn. 321, 30 Atl. 50, the language was: "All the remainder of my estate I give and bequeath to my executor for the following purposes: Money and real estate is for the purpose of establishing a free bed or beds at the hospital for the insane at Middletown for female patients; the rents and income each year to be used under the direction of the executor and his successor in office appointed by the court of probate for New Haven." It was claimed that this provision was invalid and uncertain, but the court sustained the will, and held that, if provision could not be made at the hospital at Middletown, provision to effectuate the general intent of the will should be made for female patients elsewhere. In Woodruff v. Marsh, 63 Conn. 125, 26 Atl. 846, the heirs at law contended that the gift was void for indefiniteness, uncertainty, and the absence of any grant of power to select the beneficiaries. The court sustained the gift, saying: "It is now fully recognized as a law of our jurisprudence that gifts to charitable uses are to be highly favored, and will be most liberally construed, in order to accomplish the intent of the donor; and trusts for such purposes may be established and carried into effect where, if not of a charitable nature, they could not be supported." In Dailey v. City of New Haven, supra, the trustee was the city of New Haven, which was held to be incapable to act. There was no trustee having any power to make the selection, but it was held that the probate court might appoint trustees, and, in case of its failure to act, the superior court would do so.

Complainants further insist that a direction to invest "for a term of ten years or more, at the discretion of my said executors," contravenes the rule against perpetuities, and renders the bequest void, because under it the executors may continue to accumulate for an

indefinite period, and rely upon Jocelyn v. Nott, 44 Conn. 55. In Jocelyn v. Nott, the trustees were to hold the real estate until some orthodox church connected with the General Association of Connecticut, and having the ability, with the aid of the estate given, to build and pay for a meeting house upon the land, should make application for the privilege of so doing. There was a strong probability that such an application would never be made. It would probably never be in the power of the trustees to apply the property for the benefit of the cestui que trust. Thus, the time of beginning to apply the gift to the purpose intended did not depend on the trustees, but on a condition not in their control,—a clear and important distinction between that case and this. Moreover, the statute of perpetuities, upon which Jocelyn v. Nott was founded, was repealed in 1895. In the present case the trustees may apply the fund in practical use, at their discretion, after 10 years. If they refuse to do so within a reasonable time thereafter, they can be compelled to make the application. This same objection as to perpetuities has been made many times in the Connecticut courts since Jocelyn v. Nott, and, so far as I am aware, has never been sustained. It was made in Camp v. Crocker's Adm'r, 54 Conn. 21, 5 Atl. 604; in Storrs Agricultural School v. Whitney, in New Haven Young Men's Inst. v. City of New Haven, in Bronson v. Strouse, and in Strong's Appeal, above cited. The will in Woodruff v. Marsh, supra, provides that, from the yearly income of the fund, the sum of $10,000 shall each year be added to the principal for the period of 100 years, and longer if the trustees deem it best. The court say: "If two modes of construction are fairly open, one of which would turn his bequest into an illegal perpetuity, while, by following the other, it would be valid and operative, the latter mode must be preferred." And they add: "Should the trustees continue the accumulation after a hundred years for an unreasonable time, the courts can supply the remedy." This reasoning is applicable to the present case. If the trustees should continue the accumulation for an unreasonable time, there is ample remedy in the courts. On the question of perpetuities, the complainants also cite Perry, Trusts, §§ 393–396; but in section 399, the author states that, in the absence of a statute, a direction to accumulate a fund for charity beyond the common-law limit does not vitiate the gift, and that probably courts would take care that no extraordinary or extravagant term for accumulation should be allowed. The Connecticut statute against perpetuities was repealed, as stated above, on June 29, 1895, and the testator died on November 10, 1895; so that the rule laid down in section 399 would seem to apply. The emphatic language of the closing sentence of the opinion in Strong's Appeal is applicable to the present case: "Surely, the provisions of the testator will 'need only that favorable construction to which all charitable trusts are entitled in a court of equity, to ascertain their meaning and establish their validity.' Such construction has been too often given by this court in such cases to admit of further doubt as to the settled policy and doctrines of our jurisprudence in dealing with public and charitable trusts." 68 Conn. 532, 37 Atl. 397. See, also, Tappan's Appeal, 52 Conn. 412; Coit v. Comstock, 51

Conn. 352; Ould v. Washington Hospital for Foundlings, 95 U. S. 303; Camp v. Crocker's Adm'r, 54 Conn. 21, 5 Atl. 604. Inasmuch as the testator was domiciled in the state of Connecticut, only Connecticut cases have been discussed, as they must control. Jones v. Habersham, 107 U. S. 174, 2 Sup. Ct. 336. The numerous cases from other jurisdictions cited in the able briefs of counsel seem to fully sustain the same principles. The demurrer is sustained. Let the bill be dismissed.